**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

EDDY LETROY NEW,

                Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security

                Defendant.

Case No. 3:13-cv-00094-SLG

## DECISION AND ORDER

Eddy New, a self-represented litigant, initiated this Social Security action in federal district court after exhausting administrative remedies. Mr. New seeks the reversal of an unfavorable disability determination by the Commissioner of Social Security. Also before the Court is Mr. New's Motion for Leave to Submit Photos for the Court's Review. These matters have been briefed by the parties.[1] Oral argument was not requested and was not necessary to the Court's determination.

For the reasons discussed below, the motion at Docket 42 will be denied and the Commissioner's determination is affirmed.

## BACKGROUND

Mr. New is 48 years old and a high school graduate.[2] He alleges that he is disabled

---

[1] *See* Docket 32 (Pl. Br.); Docket 39 (Def. Br.); Docket 42 (Pl. Motion); Docket 44 (Def. Opp.).

[2] *See* Docket 29 (Administrative Record [hereinafter A.R.]) 58, 24.

due to "irreversible heart damage."[3]  Prior to the onset of his alleged disability, Mr. New was employed as a car detailer, kitchen helper, laborer and mover.[4]

## I.   Mr. New's Application for Supplemental Security Disability Insurance

On January 24, 2011, Mr. New applied for disability insurance benefits under Title XVI of the Social Security Act, alleging he became disabled on July 1, 2009.[5]  Mr. New alleged disability due to "[c]ongestive heart failure" and "[c]ardiomyopathy."[6]  On May 20, 2011, the Social Security Administration determined that Mr. New was not disabled.[7]  Mr. New promptly requested a hearing before an administrative law judge ("ALJ").[8]  After a dismissal and remand from the Social Security Appeals Council not relevant to this appeal, a hearing was held on June 20, 2012, before ALJ Paul Hebda.[9]

## II.  The Administrative Record

The record before the ALJ reflected the following:

### A. Medical Evidence

The ALJ had before him approximately 125 pages of medical records documenting Mr. New's treatment for heart issues, hypertension, and other ailments.[10]  The bulk of

---

[3] Docket 32 (Pl. Br.) at 3.

[4] A.R. 222.

[5] A.R. 25.  *But see* A.R. 185 (Social Security record stating an application date of February 2, 2011); A.R. 32–33 (Mr. New's testimony that he believed he filed in 2010).

[6] A.R. 221.

[7] A.R. 74–77.

[8] A.R. 97–99.

[9] A.R. 31.

[10] *See* A.R. 284–410.

those records relate to three hospitalizations and a disability determination exam, and are summarized below. The ALJ also reviewed Mr. New's medical records from a period of incarceration which occurred during the alleged period of disability.[11]

On June 18, 2007, Mr. New was admitted to the hospital and treated for a hernia.[12] At that time, his physician diagnosed Mr. New with "[h]ypertension, poorly controlled, in a patient that is probably noncompliant with his medications."[13]

On September 7, 2009, Mr. New was admitted to Alaska Regional Hospital for heart failure, hypertension, edema, and medical non-compliance.[14] Mr. New underwent a heart catheterization and "selective coronary angiography."[15] Upon discharge on September 15, 2009, his physician recorded his diagnosis as "dilated cardiomyopathy . . . thought to be secondary possibly to intravenous drug use, alcohol use and/or exacerbation of hypertension."[16] The doctor recommended that Mr. New have a defibrillator implanted "either now or in the future."[17]

On August 3, 2010, Mr. New received an echocardiogram at Alaska Heart Institute.[18] The examining physician noted that compared to a September 8, 2009 exam,

---

[11] A.R. 399–410.

[12] A.R. 314–23.

[13] A.R. 317.

[14] A.R. 373–74.

[15] A.R. 375.

[16] A.R. 378.

[17] *Id.*

[18] A.R. 290.

there were "minimal changes noted, LV function continues to be severely impaired."[19]

On September 17, 2010, approximately one year after his prior hospitalization, Mr. New was examined by Dr. Mark Moronell at the Alaska Heart Institute.[20]  Mr. New's cardiac condition as of that day was severe.[21]  Mr. New indicated he had run out of his medications and had not taken them "over the last month or so."[22]  He also had not obtained any of the recommended follow-up care from the September 2009 hospitalization.[23]  His blood pressure was 178/153.[24]  Because of the severity of Mr. New's heart condition and high blood pressure, Dr. Moronell offered Mr. New immediate admission to the hospital "multiple times."[25]  However, Mr. New refused, and instead agreed to return in a few days.[26]  Mr. New returned to Providence Alaska Medical Center on September 22, 2010, and remained there as a patient until September 24.[27] He left that day against medical advice with a diagnosis of congestive heart failure, dilated cardiomyopathy, hypertensive heart disease, and type 2 diabetes.[28]  His treating

---

[19] A.R. 290.

[20] A.R. 284–86.

[21] *Id.*

[22] A.R. 284.

[23] *Id.*

[24] A.R. 285.

[25] *Id.*

[26] *Id.*

[27] A.R. 293.

[28] *Id.*

physician recorded that Mr. New needed a defibrillator and by leaving the hospital against medical advice without the defibrillator, he was putting himself "at risk for sudden cardiac death."[29]

On May 10, 2011, William Ragle, M.D., performed a medical exam on Mr. New for Alaska's Disability Determination Services. He concluded that Mr. New's "records support a diagnosis of cardiomyopathy possibly on the basis of poorly treated chronic and severe hypertension" along with type 2 diabetes with the "level of control unknown."[30]

The ALJ also had Alaska Department of Corrections records regarding Mr. New's medical care while incarcerated commencing on December 14, 2010.[31] Those records document that while incarcerated, Mr. New continued on a group of medications to manage his conditions. The records also reflect that while incarcerated Mr. New's blood pressure steadily improved,[32] and that on occasion he declined summonses for medical care.[33]

### B. Testimony of Mr. New

Mr. New appeared telephonically at his hearing without counsel.[34] Under examination by the ALJ, he testified that he has severe heart problems, and specified that

---

[29] *Id.*

[30] A.R. 305.

[31] A.R. 399–410.

[32] *See* A.R. 406 (blood pressure 172/99 on December 24, 2010); A.R. 406 (140/97 on January 1, 2011); A.R. 402 (blood pressure of 128/84 on November 28, 2011).

[33] *See* A.R. 402 ("Declined medical when called" on October 28, 2011); A.R. 404 (same on November 26, 2011).

[34] *See* A.R 33, 35.

he has congestive heart failure, arrhythmia, hypertension, diabetes, atrial fibrillation, and supraventricular myocardium.[35]  He reported these issues cause him to suffer "extreme duress," "shortness of breath," "breathing problems," and "severe headaches."[36]  He added, "if I'm standing I'm dizzy," and that he is dizzy "all day long every day."[37]  He stated that "while exerting any type of energy I'm going to be short of breath."[38]  Mr. New testified that due to his health conditions he is almost completely sedentary in daily life, and that his only exercise is walking around for ten minutes at a time if he is "feeling good."[39]  He added, "if you [don't] keep me from doing any substantial work, it will cause my death."[40]  He acknowledged that he had left Providence Hospital against medical advice and had refused surgery to implant a defibrillator.[41]

Mr. New testified regarding the medications he was taking and their purposes.  He said he experiences dizziness, lightheadedness, weakness, and shortness of breath as side effects.[42]  He also reported constipation as a side effect of prescribed medication.[43]

---

[35] A.R. 37–38, 49.

[36] A.R. 39.

[37] A.R. 40.

[38] *Id.*

[39] A.R. 41, 46–47.

[40] A.R. 49.

[41] A.R. 45–46.

[42] A.R. 41–44, 47–49.

[43] A.R. 39.

However, he did indicate that his medications provide some relief from his symptoms.[44]

He stated he had been on the medications for "over three years."[45]

### C. Testimony of Patricia Ayerza

Patricia Ayerza, an independent vocational expert, testified that Mr. New had been previously employed as an auto detailer, kitchen helper, forklift operator, warehouse worker, heavy construction worker, furniture mover, and fish processor as classified by the Dictionary of Occupational Titles.[46]

The ALJ posed to Ms. Ayerza the hypothetical of:

> an individual of [Mr. New's] age, education, past work experience, who can perform light level work as defined by the Social Security Administration with the following: climbing of ramps or stairs would be at the occasional level, climbing of ladders, ropes or scaffolding would be prohibited. There would be the avoidance of concentrated exposure to extreme cold and to extreme heat. I would have the avoidance of concentrated exposure to excessive vibration, as well as unprotected heights. And . . . the avoidance of concentrated exposure to irritants such as fumes, odors, dust and gases.[47]

Ms. Ayerza testified that such a person could not perform any of the jobs Mr. New had previously held.[48] But she testified that in Alaska and the United States, three jobs were

---

[44] A.R. 42–44.

[45] A.R. 41.

[46] A.R. 51–52. The Dictionary of Occupational Titles is a US Department of Labor publication of which the Social Security Administration has taken administrative notice. *See* 20 C.F.R. § 416.966(d).

[47] A.R. 52.

[48] A.R. 52–53.

suitable for such a person: garment sorter, small products assembler, and mail clerk.[49]

However, she testified that the hypothetical person could not successfully engage in such

positions in the normal labor market if he was unable to engage in and sustain work for a

full eight-hour day on a regular and consistent basis.[50]

## III.    The ALJ's Decision and Mr. New's Appeal

On July 23, 2012, the ALJ issued a decision finding Mr. New had not been under

a disability as defined by the Social Security Act since January 24, 2011, the date his

application was filed.[51]   On August 3, 2012, Mr. New requested review by the Social

Security Appeals Council.[52]   On February 7, 2013, the Appeals Council denied that

request for review.[53]

Mr. New then sought judicial review of the ALJ's findings by this Court pursuant to

42 U.S.C. § 405(g).[54]   He seeks reinstatement of his Social Security benefits.[55]

---

[49] A.R. 53.

[50] *Id.*

[51] A.R. 16–26.

[52] A.R. 11.

[53] A.R. 5.

[54] Docket 1 (Compl.) at 1.

[55] Docket 32 (Pl. Br.) at 5.  Although not reflected in the record, it appears that Mr. New received interim benefits between the time of his application and his first denial.

**DISCUSSION**

## I.    The Disability Determination Process and the ALJ's Findings

The Social Security Act provides for the payment of benefits to disabled individuals who satisfy certain income and resource eligibility criteria.[56]  Disability is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[57]

The Social Security Commissioner has established a five-step process for determining disability.[58]  At Steps 1 through 4, the claimant bears the burden of proving his entitlement to disability benefits; at Step 5, the burden shifts to the Social Security Commissioner to show there is gainful activity the claimant can perform.[59]

At Step 1, the claimant must show he is not currently engaged in substantial gainful activity.[60]  At Step 2, the claimant must demonstrate that his impairment is "severe," i.e., is an impairment that "significantly limits [his] physical or mental ability to do basic work

---

[56] 42 U.S.C. §§ 1381–1382.

[57] 42 U.S.C. § 1382c(a)(3)(A).  This definition of disability for SSI purposes mirrors the definition of disability for DIB purposes.  *See* 42 U.S.C. § 423(d)(1)(A).  Disability regulations for the SSI and DIB programs also mirror each other.  Accordingly, case law dealing with one program is generally relevant to both programs.

[58] 20 C.F.R. § 416.920(a)(4).

[59] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998)).

[60] 20 C.F.R. § 416.920(a)(4)(i).

activities" that has lasted or is expected to last for at least twelve months.[61]  At Step 3, if

the claimant proves his impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix

1, then the ALJ must conclude the claimant is disabled.[62]  If not, then the ALJ determines

the claimant's residual functional capacity ("RFC"), which is the most work the claimant

can still do despite his limitations.[63]  At Step 4, the ALJ uses the RFC to determine

whether the claimant is capable of performing his past relevant work.[64]  If the claimant

proves he cannot perform his past relevant work, then at Step 5 the Social Security

Commissioner must show—based on the claimant's RFC, age, education, and work

experience—that the claimant is capable of performing other work that exists in the

national economy.[65]  If the claimant can make an adjustment to such other work, he is

not disabled.  If he cannot make such an adjustment, then he is considered disabled.[66]

Here, at Step 1 the ALJ found that Mr. New had not engaged in substantial gainful

activity since January 24, 2011.[67]  At Step 2, the ALJ found that Mr. New had the following

severe impairments: non-ischemic cardiomyopathy, congestive heart failure, essential

---

[61] 20 C.F.R. § 416.920(a)(4)(ii), (c); 20 C.F.R. § 416.909.

[62] 20 C.F.R. § 416.920(a)(4)(iii).

[63] 20 C.F.R. § 416.945(a)(1).  The ALJ makes the RFC determination based on "all of the relevant medical and other evidence," including "descriptions and observations of [the claimant's] limitations" provided by the claimant and others.  *Id.* § 416.945(a)(3).

[64] 20 C.F.R. § 416.945(a)(4)(iv).

[65] 20 C.F.R. § 416.945(a)(4)(v).

[66] *Id.*

[67] A.R. 18.

hypertension, and diabetes mellitus.[68] At Step 3, the ALJ found that Mr. New did not have

an impairment or combination of impairments that met or medically equaled the severity

of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[69] The ALJ

then determined that Mr. New had the RFC to

> perform light work . . . except the claimant is limited to
> occasional climbing of ramps and stairs and no climbing of
> ladders, ropes, or scaffolds; and must avoid concentrated
> exposure to extreme cold and heat, excessive vibration,
> fumes, odors, dust and gases, and unprotected heights.[70]

At Step 4, the ALJ found that Mr. New was unable to perform any past relevant work.[71]

At Step 5, the ALJ found that "considering [Mr. New's] age, education, work experience,

and residual functional capacity, there are jobs that exist in significant numbers in the

national economy that [Mr. New] can perform."[72] Specifically, based on the testimony of

Ms. Ayerza, the ALJ found that Mr. New could perform the jobs of garment sorter, small

product assembler, and mail clerk.[73] Accordingly, the ALJ determined that Mr. New had

not been disabled since January 24, 2011.[74]

---

[68] *Id.* The ALJ found no medical evidence in the record to establish the existence of sleep apnea or fibromyalgia. A.R. 20.

[69] A.R. 19.

[70] *Id.*

[71] A.R. 24.

[72] *Id.*

[73] A.R. 25.

[74] *Id.*

## II.    Standard of Review

The ALJ's denial of benefits to Mr. New should be set aside "only if it is not supported by substantial evidence or is based on legal error."[75]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion."[76]  An ALJ's determination is based on legal error if the ALJ failed to apply the proper legal standard.[77]  This Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."[78]

## III.    Analysis

### A. The Court will not consider new evidence in reviewing the Commissioner's decision.

At Docket 42, Mr. New moves the Court for leave to submit medical photos in support of his case.[79]  The Commissioner opposes this motion, arguing that the administrative record for review is limited to the record that was before the Commissioner.[80]

The Commissioner is correct.  42 U.S.C. § 405(g) authorizes this Court to affirm, modify, or reverse the disability determination of the Commissioner based "upon the

---

[75] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).

[76] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[77] *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

[78] *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

[79] Docket 42 (Pl. Motion) at 1.

[80] Docket 44 (Def. Opp.) at 2.

pleadings and transcript of the record."  The Court's role is limited to reviewing the Commissioner's determination based on the evidence that was before the agency. Therefore, the Court will deny Mr. New's motion.

The Commissioner notes that where "there is new evidence" and a showing of good cause for the failure to incorporate that evidence into the administrative record, a court may remand to the Commissioner so the agency may consider the additional evidence.[81]  But here, Mr. New has provided the Court with no information about the medical photos at issue.  Consequently, there is no basis for the Court to determine whether the photos are "new" evidence, whether they are material, or whether good cause exists as to why they were not presented to the agency.  Therefore, the Court will not remand this case on the basis of § 405(g)'s new material evidence provision.

## B.    The Commissioner's disability determination was based on substantial evidence and free of legal error.

Mr. New lists five main points in his briefs: (1) that the ALJ erred in "refusing to acknowledge" all the medical information in the record; (2) that the ALJ erred in "refusing to acknowledge" information regarding the side effects of each of Mr. New's prescription medications and their side effects in combination; (3) that the Appeals Council erred in its "refusal to admit" vital medical evidence from Mr. New's 2012 Alaska Heart Institute medical exam; (4) that the ALJ erred by refusing to "include all environmental limitations, when considering residual functional capacity"; and (5) that the ALJ erred in finding Mr. New was not disabled.[82]  The Court addresses each of these issues in turn.

---

[81] Docket 44 (Def. Opp.) at 2; 42 U.S.C. § 405(g).

[82] Docket 32 (Pl. Br.) at 5.

*i.*   *The ALJ did not err in his consideration of medical evidence.*

Mr. New argues that the ALJ erred in "refusing to acknowledge medically all information in its capacity."[83]  The Court interprets this to mean that Mr. New alleges error because the ALJ did not address specifically each piece of medical evidence before him.

Social Security regulations require that the ALJ "review all of the evidence relevant" to a claim of disability that has been introduced into the proceeding.[84]  The Commissioner has directed ALJs that "[t]he disability determination or hearing decision must be set forth carefully. The rationale must reflect the sequential evaluation process; describe the weight attributed to the pertinent medical, nonmedical and vocational factors in the case; and reconcile any significant inconsistencies."[85]  But the Ninth Circuit has held that an ALJ is "not required to discuss every piece of evidence" in making a disability determination.[86]  The ALJ's extensive discussion of Mr. New's medical history indicates to the Court that the ALJ fully reviewed and carefully considered the medical evidence before him.[87]  Mr. New's argument on this topic is without merit.

*ii.*   *The ALJ did not err in assessing the credibility of Mr. New's side-effect symptom testimony.*

Mr. New argues that the ALJ erred in "refusing to acknowledge the information pertaining to the side effects" of his prescription medications, both alone and in

---

[83] *Id.*

[84] 20 C.F.R. 416.920(b).

[85] SSR 86-8, 1986 WL 68636, *8 (Jan. 1, 1986).

[86] *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (quoting *Howard ex. rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)).

[87] *See* A.R. 19–25.

combination.[88]  Mr. New directs the Court to Social Security Ruling 96-7p and two Social

Security regulations for support.[89]  All three citations are to Social Security explanations

of how symptom and medical evidence should evaluated in the disability determination

process.  20 C.F.R. § 416.927 is inapplicable to this issue; it sets out how medical opinion

evidence is to be evaluated by the ALJ.  20 C.F.R. § 404.1529 sets out how symptoms

should be evaluated, including how a claimant's testimony as to the severity of his

symptoms should be evaluated for credibility using the objective medical evidence

available in the record.[90]  Social Security Ruling 96-7p provides guidance on when the

evaluation of symptoms requires a credibility determination.[91]  Based on these citations,

the Court takes Mr. New's argument to be that the ALJ erred in making a credibility

determination that discounted Mr. New's testimony as to the severity of the side-effect

symptoms he experiences caused by medications used to treat his primary ailments.

An ALJ making a credibility determination must give "specific, clear and convincing

---

[88] Docket 32 (Pl. Br.) at 5.

[89] *Id.* (citing SSR 96-7p, 20 C.F.R. 404.1529 and 20 C.F.R. 416.927).

[90] *See* 20 C.F.R. 404.1529(c)(4) ("We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you.").

[91] *See* SSR 96-7p ("The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision.").

reasons" before discrediting a claimant's testimony about the severity of his or her symptoms.[92]  In this case, the ALJ had before him a list of the medications that Mr. New was taking that Mr. New had submitted.[93]  In addition, the ALJ had 15 pages of pharmacy records setting out the prescriptions that Mr. New had filled and detailed label content showing the uses and side effects for each medication.[94]  Finally, Mr. New's hospital records documented the medications he was taking at the time of each hospitalization.[95]

At the administrative hearing, Mr. New testified extensively as to the side effects of his medications.  He noted that he had "constipation due to medication."[96]  Later, he noted that the ALJ had "the list of medication and . . . all the side effects."  He also testified as to the side effects he was specifically experiencing, citing dizziness, lightheadedness, weakness and shortness of breath.[97]  Shortly after his testimony about side effects, the ALJ asked "Anything else you want to tell me sir?" and Mr. New responded by summing

---

[92] *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). SSR 97-6p explains in summary that in determining the severity of symptoms, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."

[93] A.R. 276.

[94] A.R. 251–66.

[95] *See* A.R. 324, 361.

[96] A.R. 41.

[97] A.R. 47–49.

up his case and concluding his testimony.[98]

The ALJ's decision addressed Mr. New's side effects as follows:

> As for claimant's alleged medication side effects, a review of his treatment records reveals only one complaint of constipation [A.R. 400]. I note that while a complaint of constipation was noted in March 2012, that treatment note does not mention if this was caused by his medication as opposed to other causes [A.R. 400]. Had his medication caused debilitating side effects, I would expect to find regular complaints to that effect and some indication that his treatment providers had adjusted his medications. As such evidence does not appear in the medical evidence of record, I find the claimant's allegation regarding medication side effects not wholly credible.[99]

The ALJ added, "there exist other reasons to question the claimant's credibility" including: (1) Mr. New's sporadic work history prior to the alleged onset of his disability; (2) his having certified his ability to work to receive unemployment benefits; (3) medical evidence indicating Mr. New was "much more active than alleged"; and (4) evidence that his symptoms "wax[ed] and wane[d] depending on his compliance with treatment."[100]

The limited medical documentation on side effects required the ALJ to make a credibility determination as to Mr. New's testimony about his symptoms, including medication side effects. The ALJ's conclusion that Mr. New's statements as to the severity of his medication side effects were not "wholly credible" was supported by specific, clear, and convincing reasons. The ALJ did not err in making a credibility determination as to Mr. New's medication side effect testimony.

---

[98] A.R. 49–50.

[99] A.R. 23.

[100] *Id.*

*iii.* *The Appeals Council did not err regarding Mr. New's post-decision medical records.*

Mr. New asserts that the Appeals Council erred it its "refusal to admit vital medical evidence" from a December 2012 Alaska Heart Institute medical exam.[101] Social Security regulations provide that [i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing."[102]

In its notification to Mr. New denying review, the Appeals Council stated:

> We also looked at the evidence from the Alaska Heart Institute dated December 4, 2012. The Administrative Law Judge decided your case through July 23, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before July 23, 2012.[103]

Because the Alaska Heart Institute records date from after the date of the ALJ's decision, the Appeals Council did not err in determining that those records would not affect the ALJ's July 23, 2012 decision.

*iv.* *The ALJ did not err in identifying jobs Mr. New could perform in Alaska under his RFC.*

Mr. New's opening brief summarily asserts that the ALJ erred in "refusing to include" all environmental limitations in Mr. New's RFC. Mr. New explains this argument in his reply brief, arguing that "the jobs selected by the ALJ . . . are all restricted due to

---

[101] Docket 32 (Pl. Brief) at 5.

[102] *Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157, 1162 n.3 (9th Cir. 2012); *see* 20 C.F.R. 416.1476(b)(1).

[103] A.R. at 6.

environmental limitations."[104]   In particular, Mr. New argues that because he has no personal means of transportation, he must commute to work via public transportation.[105] He argues that because of the nature of Alaskan winters, waiting for the bus will require exposure to extreme cold, a limitation in his RFC.[106]  Mr. New did not raise this issue to the ALJ.

The Ninth Circuit has not provided guidance on the relevance of a claimant's ability to travel as a factor in determining disability. However, the First Circuit has directly examined the issue.[107]  In *Lopez Diaz v. Secretary of Health, Education & Welfare*, a 52-year-old claimant suffered from ankle synovitis and calcaneal spurs which she testified made standing and walking very painful.[108]  The claimant also lived two hours each way from potential suitable employment, requiring a journey involving 15 minutes of walking and multiple buses.[109]  Although the ALJ questioned the claimant "about the logistics of traveling from her home to areas where work was available and her physical capacity to travel" "no mention of the issue appear[ed] in the ALJ's findings.[110]  The court therefore

---

[104] Docket 43 (Pl. Reply) at 5.

[105] *Id.*

[106] Docket 43 (Pl. Response) at 5; A.R. 19 (noting Mr. New "must avoid concentrated exposure to extreme cold and heat . . . .").

[107] *See Lopez Diaz v. Sec. of Health, Ed. & Welfare*, 585 F.2d 1137 (1st Cir. 1978).  *Lopez Diaz* has been relied upon by numerous district courts for guidance.  *See, e.g.*, *Wamsley v. Astrue*, 780 F. Supp. 2d 1180, 1193 (D. Colo. 2011); *Meeks v. Apfel*, 993 F. Supp. 1265, 1275 (W.D. Mo. 1997); *Rivera v. Sullivan*, 771 F. Supp. 1339, 1356 (S.D.N.Y. 1991).

[108] *Lopez Diaz*, 585 F.2d at 1138.

[109] *Id.* at 1141–42.

[110] *Id.* at 1139.

examined "whether the physical capacity to transport oneself to a job is relevant to a determination of disability."[111]

First, the court noted that the statutory definition of disability focused on a claimant's ability to "engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives."[112] The court held that this definition "eliminated consideration of travel difficulties when those difficulties were extrinsic to the claimed disability."[113] However, the court added:

> When, however, the claimant asserts that his locomotive disabilities render it impossible, or extremely difficult, for him to physically move his body from home to work, the claim, it seems to us, is of a different nature. His "commuting problems" are no longer extrinsic to his disabilities; they are a direct consequence of them.

The court remanded to the Commissioner for findings on the claimant's ability to travel, because the "record includes the claimant's and her counsel's repeated assertions that she could not travel," "the medical testimony concurs in her inability to stand and walk for protracted period of time," and the vocational expert who testified at the hearing acknowledged that the claimant's testimony, if true, constituted a "serious handicap in terms of vocational accommodation."[114]

---

[111] *Id.*

[112] *Id.* at 1140 (citing 42 U.S.C. § 423(d)(2)(A)); *see* 42 U.S.C. § 1382c(a)(3)(B) (same definition for Title XVI statute at issue here).

[113] *Lopez Diaz*, 585 F.2d at 1140.

[114] *Id.* at 1141.

The First Circuit also examined the question of whether a claimant's mode of transportation is a relevant factor to consider. The court held that although "the distance and inconvenience of [the claimant's] multi-step commute compound the claimant's locomotive disabilities," "it is equally clear that these individual considerations cannot enter into a finding of disability."[115] The court noted that Congress had mandated "that claimants with similar disabilities be treated with uniformity and consistency through the Nation, without regard to where a particular individual may reside."[116] As a result, the disability inquiry had to focus on "a hypothetical claimant . . . whose place of residence is unknown but reasonably close to the worksite, and who is free to choose a suitable form of conveyance from among the different means of transportation, public or private, that are normally available to the national population . . . ."[117] The court concluded that "if the hypothetical claimant could not transport herself to work, utilizing some normal means of transportation, regardless of where she resides, then disability benefits are appropriate for the actual claimant."[118]

The holdings and reasoning in *Lopez Diaz* are applicable here. Unlike the claimant in *Lopez Diaz*, Mr. New does not assert that his impairment makes it physically impossible for him to travel to and from work or provide any evidence to support that contention. Mr. New also failed to present any evidence that using public transit will require him to

---

[115] *Id.* at 1142.

[116] *Id.* (internal quotation marks omitted).

[117] *Id.*

[118] *Id.*

undergo "concentrated" exposure to cold, the limitation the ALJ found in Mr. New's RFC.[119]   Additionally, *Lopez Diaz* holds that it would be improper for an ALJ's disability determination to turn on whether a claimant could drive himself to a place of employment or would rely on public transportation.   The Court finds this analysis from the First Circuit to be persuasive.   Therefore, the ALJ did not err in failing to consider whether the Alaskan weather and Mr. New's transportation circumstances rendered him disabled.

     *v.   Viewing the record as a whole, substantial evidence supports the ALJ's determination that Mr. New is not disabled.*

Mr. New argues that the ALJ erred in finding that he was not disabled.   The Court evaluates disability determinations under the "substantial evidence" standard of 42 U.S.C. § 405(g).   Mr. New does not direct the Court to any specific deficiency in the ALJ's determination.   The record before the ALJ contains ample evidence that supports the ALJ's conclusion that Mr. New's conditions do not render him disabled.   In particular, the record fully supports the ALJ's finding that Mr. New's "response to treatment while hospitalized as well as the nearly complete absence of symptoms while incarcerated, strongly suggests that his cardiomyopathy related symptoms are reasonably controllable with appropriate treatment."[120]   In the medical records, many of Mr. New's healthcare providers observed that the severity of his physical symptoms was related to the poor management of his conditions.[121]   The ALJ could reasonably interpret the medical evidence before him to indicate that with adequate medical care and compliance, Mr. New

---

[119] *See* A.R. 19.

[120] A.R. 22.

[121] A.R. 284, 305, 317.

is capable of performing jobs within his RFC. Therefore, the Court finds that substantial evidence supported the ALJ's conclusion that Mr. New has the capacity to engage in certain substantial gainful activity and is not disabled within the meaning of the Social Security Act.

## CONCLUSION

The Commissioner's decision is AFFIRMED because it is supported by substantial evidence and is free from legal error. The Clerk of Court is directed to enter judgment accordingly.

IT IS FURTHER ORDERED that the Motion for Leave to Submit Photos at Docket 42 is DENIED.

DATED this 30th day of September, 2014.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE